**IT IS ORDERED as set forth below:**



Date:  May 19, 2017

_____

**W. Homer Drake
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF:** | : | **CASE NUMBER** |
| | : | |
| PEACH STATE AMBULANCE, INC., | : | 16-12121-WHD |
| | : | |
| | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 7 OF THE |
| DEBTOR. | : | BANKRUPTCY CODE |

**ORDER**

Before the Court is the Application for Final Allowance of Compensation and Reimbursement of Expenses filed by Lamberth, Cifelli, Ellis & Nason, P.A. (hereinafter "LCEN") in the above-styled case. LCEN requests an award of $31,826.50 as compensation for its representation of Peach State Ambulance, Inc. (hereinafter the "Debtor") while this case was in Chapter 11. LCEN also requests reimbursement of $1,305.37 in expenses. LCEN seeks permission to apply a

$20,000 retainer obtained from the Debtor prior to the filing of the petition toward these amounts, and proposes that the remainder be treated as a Chapter 11 administrative expense.

Guy G. Gebhardt (hereinafter the "U.S. Trustee"), acting United States Trustee for Region 21, has objected to LCEN's application.[1]  The U.S. Trustee contends, on information and belief, that the Debtor's bankruptcy estate is administratively insolvent, and therefore LCEN must disgorge its $20,000 retainer to preserve the priority distribution scheme under the Bankruptcy Code. Additionally, the U.S. Trustee believes that a downward adjustment of LCEN's fee is warranted.  The U.S. Trustee alleges that LCEN failed to exercise due diligence in investigating claims and preparing the Debtor's schedules.

This matter came on for hearing on March 22, 2017, at 10:10 AM. Representatives for LCEN and the U.S. Trustee appeared at the hearing, as did

---

[1] In its brief, LCEN asserts that the U.S. Trustee does not have standing to make this objection.  The plain text of § 307 of the Code belies that argument.  That section allows the U.S. Trustee to "raise and…appear and be heard on any issue in any case or proceeding under this title."  11 U.S.C. § 307.  The sole exception is that the U.S. Trustee may not file a plan in a Chapter 11 case.  *Id.*  Thus, the Court concludes that there is no standing issue here.

James G. Baker, the trustee for the Debtor's bankruptcy estate. After hearing from these parties, the Court requested briefing within twenty days and informed the parties that it would consider how best to proceed.

The U.S. Trustee and LCEN have filed briefs in support of their positions. Having considered those briefs, the representations of the parties at the hearing, and LCEN's application, the Court concludes as set forth below.

## Background

A. The Bankruptcy Case

The Debtor initiated this case on October 24, 2016, by filing a voluntary petition under Chapter 11 of the Bankruptcy Code. On November 18, 2017, the Court approved the employment of LCEN as counsel for the Debtor.

On December 15, 2016, the U.S. Trustee filed a motion seeking the appointment of a Chapter 11 trustee. The U.S. Trustee alleged in the motion that the Debtor, by and through one of its principals, had sold property of the estate outside of the ordinary course of business. The Court granted the motion by a consent order entered on December 20, 2016.

The U.S. Trustee first appointed, and the Court approved, Theo D. Mann as

the Chapter 11 trustee. However, less than two weeks after his appointment, Mr. Mann resigned the trusteeship because an attorney for an unscheduled creditor, Synovus Bank, with which Mr. Mann has a conflict, made an appearance in the case. After Mr. Mann's withdrawal, the U.S. Trustee appointed James G. Baker to the position.

Shortly after his appointment as trustee, Mr. Baker filed a motion to have the case converted to Chapter 7. That motion was granted on February 9, 2017. The U.S. Trustee subsequently appointed Mr. Baker (hereinafter the "Chapter 7 Trustee") as trustee in the Chapter 7 case.

B. State Bank's Appearance

On February 17, 2017, the Chapter 7 Trustee filed two motions. The first sought authorization to complete certain of the Debtor's pre-petition business transactions. The second sought approval to sell an assortment of the Debtor's assets, mostly equipment.

State Bank and Trust Co. (hereinafter "State Bank") filed limited objections to both motions. In those objections, State Bank asserted that it held an interest in the Debtor's assets as security for two loans: one in the amount of $9,476.04, and the

4

other in the amount of $1,760,385.44. State Bank desired that its interest attach to any proceeds from the business transactions and the sale of assets.

Despite these substantial interests, State Bank was not listed on the Debtor's schedules, and it did not receive notice of the Debtor's case. The Chapter 7 Trustee, who described the appearance of State Bank in the case as "a gut punch," was able to work out arrangements with State Bank whereby State Bank's lien attached to the proceeds, but carve-outs were provided for the Debtor's estate to receive something from the transactions and the sale.

C. The Fee Application

On February 15, 2017, LCEN filed the instant application. LCEN requests approval of a total of $33,131.87 in compensation for its representation of the Debtor and reimbursement for expenses. LCEN also requests permission to apply a $20,000 pre-petition retainer it received from the Debtor to payment of its fees and expenses. The remaining $13,131.87 would be paid according to the Chapter 7 distribution scheme as a Chapter 11 administrative expense.

On March 21, 2017, the U.S. Trustee filed an objection to LCEN's application. The U.S. Trustee made two objections: (1) the Court should adjust

5

LCEN's fee because LCEN was not diligent in preparing the Debtor's schedules, as evidenced by the failure to schedule State Bank as a creditor; and (2) because the estate is administratively insolvent, the Court should require LCEN to disgorge the $20,000 to preserve the Code's priority distribution scheme.

At the hearing held on March 22, 2017, LCEN attempted to explain why State Bank was not included in the Debtor's schedules. LCEN maintained that the Debtor's principals, whom LCEN assisted in the preparation of the schedules, did not know about the debt owed to State Bank. Apparently, the Debtor's liability for the larger debt is the result of a cross-collateralization agreement involving State Bank, the Debtor, and the Debtor's landlord, Tyler Olson, LLC, which is owned by a principal of the Debtor. Tyler Olson, LLC, took out the large loan and had it cross-collateralized with another loan that had been made directly to the Debtor. Despite the existence of this agreement, LCEN insists that the debt appeared nowhere in the Debtor's financial statements, and argues that it could not have known about it.

## Discussion

A. Reasonableness of LCEN's Requested Fee

The fees paid to professionals employed by a bankruptcy estate are subject to Court review. *See* 11 U.S.C. §§ 329, 330. Section 330 of the Bankruptcy Code states that "the court may award to…a professional person…(A) reasonable compensation for actual, necessary services rendered by the…professional person or attorney; and (B) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). The amount awarded is not governed by the amount the professional requests. *See* 11 U.S.C. § 330(a)(2). Instead, the key to the amount of compensation allowed is reasonableness, and the Code expressly calls for the court to determine "reasonable compensation." *See* 11 U.S.C. § 330(a)(3). The Code demands that courts consider "all relevant factors," and provides the following non-exclusive list:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the

7

> problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Id.* The Code also provides that a court "shall not allow compensation for—(i) unnecessary duplication of services; or (ii) services that were not—(I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A); *see also In re Spanjer Bros., Inc.*, 191 B.R. 738, 748 (Bankr. N.D. Ill. 1996) (suggesting that courts consider "whether the services rendered promoted the bankruptcy process or administration of the estate"). Courts should take the responsibility to review fee awards seriously, because, as another court has bluntly put it, "[t]he estate is not a cash cow to be milked to death by professionals." *In re Chas A. Stevens & Co.*, 105 B.R. 866, 872 (Bankr. N.D. Ill. 1989). The burden to show entitlement to fees is on the professional seeking them. *Brake v. Tavormina (In re Beverly Mfg. Corp.)*, 841 F.2d 365, 371 (11th Cir. 1988); *In re Spanjer Bros., Inc.*, 191 B.R. at 747.

In the instant case, the U.S. Trustee impugns LCEN's efforts in reviewing

claims and preparing the Debtor's schedules. The U.S. Trustee asserts that the failure to schedule a creditor holding an approximately $1.7 million claim is an inexcusable oversight that justifies a downward adjustment of fees. In response, LCEN asserts that it could not have known about the debt with State Bank. It states in its brief that in preparing the schedules, at least seventy-one financing statements were discovered. LCEN allegedly reviewed these statements with the Debtor's principals, but, either "under the mistaken belief that the matured Note had been paid or by oversight, [they] did not include State Bank on the initial matrix and did not include State Bank in the schedules." Thus, LCEN's argument is, essentially, that the principals did not know about the debt, so LCEN could not have known about the debt.

The Court finds that LCEN has failed to show that it is entitled to the full amount of fees requested. The failure to schedule a creditor holding an approximately $1.7 million claim is not an omission to be written off lightly. While LCEN asserts that it performed a search of the public records and reviewed the statements on file, it has not presented any evidence that it did so. The time log attached to LCEN's application has a 2.5 hour entry labeled "Conference with

9

[principals] re filings and related issues and strategies," but that is not sufficient to show LCEN acted diligently in reviewing financing statements and identifying creditors.

In addition, the Court takes note of the failure to identify Synovus Bank as a creditor. The failure to schedule Synovus Bank, which has filed a $300,000 claim in the case, caused the U.S. Trustee to have to find a new Chapter 11 trustee when Mr. Mann withdrew due to a conflict. LCEN has given no explanation for the failure to schedule Synovus Bank, though the Court imagines the excuse is the same as its explanation for the failure to schedule State Bank: the Debtor's principals did not identify Synovus Bank as a creditor.

The failure to schedule State Bank and Synovus Bank suggests a lack of diligence on the part of LCEN in its representation of the Debtor, and the Court has nothing from which to conclude the opposite. Consequently, LCEN has not carried its burden of showing its entitlement to all of the fees it requests.

Looking at the documents attached to LCEN's application, it appears that LCEN claims 19.1 hours of work related to preparing the petition, identifying creditors, and preparing the schedules, including an amendment. Elizabeth A.

10

Miller billed 9.8 of those hours at a rate of $195 per hour. G. Frank Nason, IV, billed the remaining 9.3 hours at a rate of $395 per hour. This leads to a total cost of $5,584.50 related to the preparation of schedules and identification of creditors. Given the fact that two major creditors of the Debtor, including one holding a claim for more than $1 million, were not scheduled, the Court believes that a reduction by this amount is warranted. Therefore, the Court will award LCEN its requested fees and expenses reduced by $5,584.50.

B. The Retainer

The parties have also raised the issue of how any fees the Court awards to LCEN will be paid. LCEN, understandably, wants to apply the $20,000 retainer it received pre-petition, and have any remainder treated as a Chapter 11 administrative expense. The U.S. Trustee, conversely, asserts that the retainer is property of the estate, the estate is administratively insolvent, and LCEN should be made to disgorge the $20,000 for distribution to creditors according to the Chapter 7 scheme.

To understand why the U.S. Trustee is demanding the disgorgement of the retainer, it is necessary to understand the nature of LCEN's claim for fees and how it will be treated in the Chapter 7 case. LCEN's claim, because it is "compensation

and reimbursement awarded under section 330(a) of this title," is an "administrative expense."  11 U.S.C. § 503(b)(2).  In the Chapter 7 distribution scheme, administrative expenses such as LCEN's claim are given priority, second only to domestic support obligations.  *See* 11 U.S.C. § 706(a)(1); *see also* 11 U.S.C. § 507(a)(2).  Claims within the same level of priority are paid pro rata from available funds.  11 U.S.C. § 726(b).  However, in a case converted to Chapter 7 from some other chapter, administrative expenses incurred after the conversion have priority over administrative expenses incurred prior to the conversion.  *Id.*  Thus, in a case such as the Debtor's, which began as a Chapter 11 case but was converted to Chapter 7, administrative expenses incurred while the case was in Chapter 7 must be paid in full before any payments are made toward the expenses incurred while the case was in Chapter 11.

In some cases, the subordination of pre-conversion expenses is a non-issue, as there is enough money to go around.  But by placing Chapter 11 administrative expenses on a lower tier than Chapter 7 expenses, the Code creates a problem for attorneys holding a retainer when the case is "administratively insolvent," that is, when there are insufficient funds in the estate to pay all administrative expense

12

claims in full. The issue in that situation is whether allowing a professional to apply a retainer to pay its administrative expense claim incurred prior to conversion, and in that way to receive more than the professional would in an ordinary pro rata distribution, violates the Chapter 7 priority scheme.

Critically, whether the instant case is administratively insolvent remains to be seen. The U.S. Trustee asserts in his motion that the case is administratively insolvent. However, at the March 22nd hearing, the Chapter 7 Trustee stated that the case is too young to reach a definite conclusion. The Chapter 7 Trustee alluded to a few possible avenues by which he could recover assets, including a potential preference action, but never committed as to whether the case was administratively insolvent.

In light of the Chapter 7 Trustee's comments concerning administrative insolvency, the Court declines to consider the retainer-disgorgement issue at this time. Though the case appears to be administratively insolvent at the moment, there is the possibility that the Chapter 7 Trustee will recover sufficient assets to provide for all administrative expenses without requiring the disgorgement of LCEN's retainer. Should the Chapter 7 Trustee, after completing his investigation

13

into the assets available for distribution, determine that the case is administratively insolvent, the Court will take up the issue of LCEN's retainer at that time.

## Conclusion

In accordance with the foregoing, it is hereby **ORDERED** that the Application for Final Allowance of Compensation and Reimbursement of Expenses is **GRANTED IN PART**. LCEN is awarded $26,242 in compensation for its representation of the Debtor, and $1,305.37 as reimbursement for its expenses. If necessary, the Court will determine whether LCEN may apply its $20,000 retainer to the payment of those fees and expenses at a later date.

**IT IS FURTHER ORDERED** that the Chapter 7 Trustee shall, upon completion of his investigation concerning the recovery of assets for the estate, file a status report with the Court, with service on LCEN and the U.S. Trustee, informing the Court whether the estate is administratively insolvent.

The Clerk is **DIRECTED** to serve this Order on the Debtor, LCEN, the Chapter 7 Trustee, and the U.S. Trustee.

## END OF DOCUMENT